IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLUTCH AUTO LIMITED, an Indian corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 cv 9564 |
| NAVISTAR, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) | Jury Trial Demanded |

# COMPLAINT

NOW COMES Plaintiff CLUTCH AUTO LIMITED ("CLUTCH AUTO"), by and through counsel, and complains of Defendant NAVISTAR, INC. ("NAVISTAR"), as follows:

### Nature of the Action

1. CLUTCH AUTO brings this action seeking compensatory and punitive damages, and rescission of the contractual agreements it entered into with NAVISTAR, due to NAVISTAR's fraudulently inducing CLUTCH AUTO to enter into said agreements and subsequent breach of said agreements.

2. The dispute between the parties stems from a Supply Agreement that the parties entered into in 2008, and clutch products that CLUTCH AUTO manufactured based on NAVISTAR's Electronic Data Interchange ("EDI") visibility and product forecasts adopted and maintained by NAVISTAR providing seller-buyer information, pursuant to which CLUTCH AUTO manufactured approximately $5.2 million worth of automotive clutches that conformed to NAVISTAR's requisite specifications. When NAVISTAR denied its obligation to pay for said clutches, the parties engaged in settlement negotiations to resolve their dispute on certain terms.

3.      During those negotiations, NAVISTAR deliberately and intentionally made repeated false promises and misrepresentations, assuring CLUTCH AUTO of NAVISTAR's good faith intentions to continue their business relationship and to work with CLUTCH AUTO to sell CLUTCH AUTO's inventory. CLUTCH AUTO reasonably relied on those false promises and misrepresentations and, based thereupon, subsequently agreed to and executed a settlement agreement and release of all claims that CLUTCH AUTO had against NAVISTAR up to that point in time. However, NAVISTAR had a preexisting intention of defrauding CLUTCH AUTO out of its right to payment, and at no time intended to honor its promises and representations.

4.      NAVISTAR's fraudulent inducement and subsequent contractual breach damaged CLUTCH AUTO, as CLUTCH AUTO had made huge financial investments over the course of several years in product development, testing, and manufacturing in order to meet NAVISTAR's EDI visibility and product forecast requirements as were provided by NAVISTAR to CLUTCH AUTO from time to time. Therefore, CLUTCH AUTO seeks compensatory and punitive damages, and equitable relief in this action.

## The Parties

5.      Plaintiff CLUTCH AUTO is a corporation duly organized and existing under the laws of India, having its registered office at 2-E/14 (First Floor), Jhandewalan Extension, New Delhi-110 055 India, and place of business at 12/4 Mathura Road, Faridabad, Haryana 121003, India.

6.      Defendant NAVISTAR, INC. is a Delaware corporation, located and doing business in the State of Illinois, and having its headquarters and principal place of business at 2701 Navistar Drive, Lisle, Illinois.

**Jurisdiction and Venue**

7. Pursuant to 28 U.S.C. § 1332(a)(2), this Court has subject matter jurisdiction over the claims in this action that relate to breach of contract because this is a civil action between a citizen of a state (Illinois) and a citizen of a foreign country (India), and the matter in controversy exceeds the sum of $75,000.

8. Venue in this District is proper because NAVISTAR transacts business in this District and is deemed to reside here. Furthermore, a substantial part of the events giving rise to the claims alleged herein arose in this District because NAVISTAR's corporate headquarters are located in this District.

**The 2008 Supply Agreement**

9. CLUTCH AUTO is in the business of manufacturing clutches for vehicles.

10. NAVISTAR is a manufacturer of vehicles.

11. On June 18, 2008, CLUTCH AUTO and NAVISTAR entered into a Supply Agreement whereby CLUTCH AUTO agreed to manufacture and supply clutches to NAVISTAR according to NAVISTAR's unique specifications.

12. In order to meet NAVISTAR's EDI visibility and product forecast requirements, CLUTCH AUTO expended millions of dollars by way of financial investments over the course of several years in research and development, training, machinery, testing, hiring, and infrastructure costs, and CLUTCH AUTO manufactured millions of dollars worth of clutches based upon NAVISTAR's EDI visibility and product forecast requirements as were provided by NAVISTAR to CLUTCH AUTO from time to time.

13. However, on February 24, 2011, NAVISTAR terminated the Supply Agreement.

### The Dispute Regarding Payment for Manufactured Products

14. At the time NAVISTAR terminated the Supply Agreement, CLUTCH AUTO had approximately $5.2 million worth of inventory of clutches that CLUTCH AUTO manufactured to NAVISTAR's specifications and brands pursuant to the Supply Agreement and based on NAVISTAR's EDI visibility and product forecasts. However, NAVISTAR refused to accept shipment or pay for this inventory.

15. CLUTCH AUTO was entitled to payment for its inventory of clutches that it manufactured for NAVISTAR pursuant to the Supply Agreement and based on NAVISTAR's EDI visibility and product forecasts, and CLUTCH AUTO demanded payment from NAVISTAR. However, NAVISTAR refused to pay, and denied that it was obligated to pay CLUTCH AUTO for that inventory.

### The Parties' Negotiations and Settlement of the Dispute

16. On September 19, 2011, after several meetings and the exchange of significant correspondence setting forth their respective positions, representatives of CLUTCH AUTO and NAVISTAR met in an attempt to amicably resolve the dispute between the parties. During that meeting, representatives of the parties reached a tentative agreement to settle the dispute.

17. On October 19, 2011, CLUTCH AUTO received an email from NAVISTAR, claiming that NAVISTAR could forward a new service parts supply agreement *the very next week* if CLUTCH AUTO would sign a settlement agreement and release. (*See* October 19, 2011 email, attached hereto as Exhibit A).

18. On November 9, 2011, Persio Lisboa, Chief Procurement Officer of NAVISTAR, sent a draft settlement agreement to Vijay Mehta, CLUTCH AUTO's Chairman and Managing

Director ("Letter Agreement"). (*See* November 9, 2011 Letter Agreement, attached hereto as Exhibit B). The Letter Agreement was fully executed by the parties on November 10, 2011.

19. The Letter Agreement provides, in part, that NAVISTAR agreed to pay for and accept delivery of $575,545 worth of clutches out of the approximately $5.2 million in inventory in CLUTCH AUTO's possession that CLUTCH AUTO manufactured for NAVISTAR pursuant to the Supply Agreement and based on NAVISTAR's EDI visibility and product forecasts. (Exhibit B, ¶¶ 1-3).

20. The Letter Agreement also provides that "Navistar will engage in good faith negotiations for a new Service Parts supply agreement with CLUTCH AUTO on terms that are mutually agreeable to both parties." (Exhibit B, ¶ 4). Under this provision, NAVISTAR agreed to enter into a new supply agreement with CLUTCH AUTO whereby NAVISTAR would purchase clutches from CLUTCH AUTO as service parts for use in servicing existing vehicles (*i.e.*, not to be used in the production of new vehicles). NAVISTAR acknowledged that CLUTCH AUTO's manufacturing processes and clutch products were of good quality such that NAVISTAR wanted to continue to do business with CLUTCH AUTO.

21. The Letter Agreement also expressed NAVISTAR's intention to enter into a production parts supply agreement with CLUTCH AUTO for clutches that would be put in new vehicles. (Exhibit B, ¶ 4).

22. The Letter Agreement was contingent upon a written release of CLUTCH AUTO's claims against NAVISTAR arising out of NAVISTAR's failure to pay for the inventory of clutches that CLUTCH AUTO manufactured pursuant to the Supply Agreement. (Exhibit B, ¶ 5).

23. On November 11, 2011, a written Release of Claims by CLUTCH AUTO ("Release") was fully executed by the parties. (*See* Release, attached hereto as Exhibit C). The Release states that "[t]his document will serve as the written Release that is described in paragraph 5 of the November 9, 2011 Letter Agreement ...." (Exhibit C).

24. The Release provides that in consideration of NAVISTAR's compliance with the terms of the Letter Agreement, CLUTCH AUTO would provide NAVISTAR with a full release of all claims accruing up to that point in time arising out of or relating to CLUTCH AUTO's manufacture of clutches for NAVISTAR. (Exhibit C).

25. The Release also provides, in part:

> Pursuant to paragraph 4 in the November 9, 2011 Letter Agreement regarding the Parties' agreement to negotiate in good faith the possible terms of a Supply Agreement for the purchase and sale of CLUTCH AUTO products to be resold as Service Parts, **Navistar agrees to work with CLUTCH AUTO to sell as Service Parts the clutch products already built by CLUTCH AUTO and identified in the July 12, 2011 Letter as inventory from EDI visibility and forecasts** ….

(Exhibit C) (emphasis added).

26. Therefore, under the terms of the Letter Agreement and Release, NAVISTAR explicitly promised to enter into a new service parts supply agreement with CLUTCH AUTO. Further, NAVISTAR promised to work with CLUTCH AUTO to sell the remaining inventory as service parts for existing vehicles through NAVISTAR's authorized dealers. Indeed, NAVISTAR represented that CLUTCH AUTO's products would be included in NAVISTAR's business plan for future sales.

27. NAVISTAR provided CLUTCH AUTO with market share figures based on its own historical sales, projected sales, and market trends that indicated steady, ever-increasing sales of CLUTCH AUTO's service parts ("Business Plan"). (*See* NAVISTAR's Distribution Business Plan, attached hereto as Exhibit D). Specifically, NAVISTAR described a 174%

increase in sales of CLUTCH AUTO clutches between 2008 and 2009 (*i.e.,* from $3.1 to $8.5 million); a 41% increase between 2009 and 2010 (*i.e.,* from $8.5 to $12 million); a 42% increase between 2010 and 2011 (*i.e.,* from $12 to $17 million); and a 29% increase between 2011 and 2012 (*i.e.,* from $17 to $22 million).

28. Not only did CLUTCH AUTO have an inventory of clutches worth approximately $5.2 million that NAVISTAR refused to pay for, CLUTCH AUTO had also made huge financial investments over many years in product development, testing, training, and marketing and technical materials so that it could have product immediately available for NAVISTAR's EDI visibility and product forecasts.

29. CLUTCH AUTO agreed to release its valid claims against NAVISTAR based upon NAVISTAR's explicit representations. NAVISTAR's promises of future business with CLUTCH AUTO induced CLUTCH AUTO to release its valid claims concerning NAVISTAR's obligation to pay for the entire inventory of clutches, as CLUTCH AUTO had built-up a substantial inventory and had the manufacturing infrastructure in place to meet the needs of future sales under the Business Plan.

### Navistar's Failure to Abide by the Terms of the Agreements

30. Despite NAVISTAR's promises in the Letter Agreement and Release to work with CLUTCH AUTO to sell its inventory of clutches manufactured for NAVISTAR, NAVISTAR did not make any effort to do so.

31. CLUTCH AUTO's products met and are meeting all of NAVISTAR's specifications and standards, and CLUTCH AUTO's products were and are less expensive than its competitor's products.

32. NAVISTAR has purchased none of CLUTCH AUTO's existing inventory or any other products from CLUTCH AUTO. Instead, NAVISTAR has been purchasing clutches for use as service parts from CLUTCH AUTO's competitor rather than purchasing the products from CLUTCH AUTO, in complete breach of its promises and obligations undertaken in the Letter Agreement and Release.

## COUNT I
### (Breach of Contract)

NOW COMES Plaintiff CLUTCH AUTO LIMITED, by and through counsel, and complains of Defendant NAVISTAR, INC., as follows:

1. Plaintiff repeats and realleges paragraphs one (1) through thirty-two (32) above as paragraphs one (1) through thirty-two (32) of this Count I, with the same force and effect as though fully set forth herein.

33. NAVISTAR's failure to work with CLUTCH AUTO to sell as service parts the inventory of clutches already built by CLUTCH AUTO and failure to purchase any of CLUTCH AUTO's inventory of clutches, while instead purchasing clutches from CLUTCH AUTO's competitor for use as service parts, constitute breaches of the Letter Agreement and Release.

34. NAVISTAR's failure to exercise its discretion to work with CLUTCH AUTO to sell as service parts the inventory of clutches already built by CLUTCH AUTO, and NAVISTAR's failure to purchase any of CLUTCH AUTO's inventory of clutches, also constitute breaches of its duty of good faith and fair dealing.

35. CLUTCH AUTO has performed all of its obligations under the Letter Agreement and Release.

36. CLUTCH AUTO has been damaged by NAVISTAR's breaches in an amount in excess of $75,000.

WHEREFORE, Plaintiff CLUTCH AUTO LIMITED prays for judgment against Defendant NAVISTAR, INC. in an amount in excess of seventy five thousand dollars ($75,000.00), plus attorney's fees and costs, and for any other relief deemed just under the circumstances.

**COUNT II**
**(Promissory Fraud)**
*Pleaded in the alternative to Count I*

1. Plaintiff repeats and realleges paragraphs one (1) through thirty-two (32) above as paragraphs one (1) through thirty-two (32) of this Count II, with the same force and effect as though fully set forth herein.

33. Starting in April 2011, CLUTCH AUTO repeatedly informed NAVISTAR of its claim against NAVISTAR for the monies owed to CLUTCH AUTO pursuant to the Supply Agreement.

34. NAVISTAR knew of the severe financial harm to CLUTCH AUTO caused by its refusal to pay for the clutches that CLUTCH AUTO had manufactured for NAVISTAR based on the EDI visibility and product forecasts. NAVISTAR knew that because CLUTCH AUTO had already invested millions of dollars in research, development and infrastructure—including a factory line dedicated to production of clutches solely for NAVISTAR—to ensure that it would have product immediately available for NAVISTAR's EDI visibility and forecasts, NAVISTAR's promise of future sales under the Business Plan would be far more lucrative to CLUTCH AUTO than obtaining a judgment against NAVISTAR for its failure to pay for CLUTCH AUTO's existing inventory of clutches.

35. With this knowledge, NAVISTAR developed a scheme to induce CLUTCH AUTO to release its valid claims against NAVISTAR by making false promises in the Letter Agreement and Release that it did not intend to honor.

36. In order to accomplish its scheme to induce CLUTCH AUTO to execute the Letter Agreement and Release, NAVISTAR made repeated false promises and misrepresentations to CLUTCH AUTO that it would "work with CLUTCH AUTO to sell as Service Parts the clutch products already built by CLUTCH AUTO…." (Exhibit C).

37. Additionally, NAVISTAR mislead CLUTCH AUTO by representing in October 2011 that, as soon as CLUTCH AUTO signed a settlement agreement and release, it would forward a new service parts supply agreement in a week. (Exhibit A). Though CLUTCH AUTO signed the Letter Agreement and Release in November 2011, NAVISTAR failed to honor that promise and representation. Thereafter, NAVISTAR refused to purchase CLUTCH AUTO's existing inventory and refused to give CLUTCH AUTO any business pursuant to the Business Plan, and instead NAVISTAR purchased clutches from CLUTCH AUTO's competitor.

38. Additionally, during several meetings and exchanges prior to the execution of the Letter Agreement and Release, NAVISTAR deliberately and intentionally misled CLUTCH AUTO by misrepresenting its willingness to enter into a production parts agreement after entering into an agreement with respect to service parts.

39. Subsequent to said meetings and exchanges, CLUTCH AUTO sent a follow-up email that memorialized the understanding between the parties. Therein, CLUTCH AUTO confirmed that "a Production Parts agreement may be concluded after a satisfactory experience on Service Parts." (*See* November 9, 2011 email, attached hereto as Exhibit E). NAVISTAR did not manifest any contrary understanding before executing the Release on November 10, 2011.

40. Indeed, after the Letter Agreement was fully executed, NAVISTAR relied on the CLUTCH AUTO email (instead of the Letter Agreement) on an issue where there was an error in the Letter Agreement. Specifically, Purchase Order 40100-0000003129 was for $144,628 worth of clutches as correctly stated in the email (Exhibit E), not the $144,000 amount stated in the Letter Agreement (Exhibit B). NAVISTAR actually paid $144,628 to CLUTCH AUTO as part of the settlement.

41. As set forth above, the Letter Agreement expressed NAVISTAR's intention, based on the success of the service parts arrangement, to enter into a production parts supply agreement with CLUTCH AUTO for clutches that would be put in new vehicles. (Exhibit B, ¶ 4. *See also* Exhibit E). However, NAVISTAR never honored its obligation to work with CLUTCH AUTO to purchase and sell CLUTCH AUTO's inventory as service parts. Instead, NAVISTAR bought clutches from CLUTCH AUTO's competitor.

42. Thus, NAVISTAR intentionally prevented any satisfactory experience with CLUTCH AUTO's service parts from occurring. By doing so, NAVISTAR intentionally precluded CLUTCH AUTO from entering into a production parts agreement with NAVISTAR, as NAVISTAR prevented the "condition precedent" from occurring.

43. Finally, NAVISTAR deliberately and intentionally mislead CLUTCH AUTO by repeatedly misrepresenting its good faith, "sincere desire to make the business relationship between our two companies successful" (Exhibit B), and by providing CLUTCH AUTO with rosy sales projections in the Business Plan. (Exhibit D).

44. CLUTCH AUTO reasonably relied upon NAVISTAR's misrepresentations to conclude that future sales from new supply agreements for service and production parts would be

more lucrative than obtaining a judgment against NAVISTAR for the amount of the existing inventory.

45. NAVISTAR's aforementioned deliberate and intentional false promises and misrepresentations were material to CLUTCH AUTO's decision to execute the Letter Agreement and Release, and CLUTCH AUTO would not have executed the Letter Agreement and Release but for those false promises and misrepresentations.

46. At the time NAVISTAR made said promises and representations, NAVISTAR knew them to be false, and had no intention of honoring them. Instead, NAVISTAR intended to purchase clutches from CLUTCH AUTO's competitor, and NAVISTAR concealed that fact from CLUTCH AUTO.

47. NAVISTAR made said false promises and misrepresentations pursuant to a larger scheme to defraud CLUTCH AUTO out of the monies owed to it by NAVISTAR and deprive CLUTCH AUTO of its valid and meritorious claims against NAVISTAR.

48. CLUTCH AUTO reasonably relied upon NAVISTAR's aforementioned promises and misrepresentations as the basis for signing the Letter Agreement and Release, which caused CLUTCH AUTO to incur significant financial damages.

WHEREFORE, Plaintiff CLUTCH AUTO LIMITED prays that this Court enter judgment in its favor, as follows:

    a. Compensatory damages in an amount in excess of seventy five thousand dollars ($75,000.00);

    b. Punitive damages;

    c. Rescission of the Letter Agreement and Release, such that the parties are restored to their pre-contract positions;

    d. Attorney's fees and costs; and

e. Any other relief that this Court may deem just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by a 12-person jury on all issues so triable.

Plaintiff CLUTCH AUTO LIMITED,

By:   s/ Thomas A. Zimmerman, Jr.
      Thomas A. Zimmerman, Jr. (IL# 6231944)
      Adam M. Tamburelli (IL# 6292017)
      ZIMMERMAN LAW OFFICES, P.C.
      77 West Washington Street, Suite 1220
      Chicago, Illinois 60602
      (312) 440-0020
      www.attorneyzim.com

Counsel for Plaintiff