**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CLUTCH AUTO LIMITED, an Indian corporation, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 12 cv 9564 |
| | ) |
| NAVISTAR, INC., a Delaware corporation, | ) |
| | ) |
| Defendant. | )    Jury Trial Demanded |

# FIRST AMENDED COMPLAINT

NOW COMES Plaintiff CLUTCH AUTO LIMITED ("CLUTCH AUTO"), by and through counsel, and complains of Defendant NAVISTAR, INC. ("NAVISTAR"), as follows:

### Nature of the Action

1.    CLUTCH AUTO brings this action seeking compensatory and punitive damages, and rescission of the contractual agreements it entered into with NAVISTAR, due to NAVISTAR's fraudulently inducing CLUTCH AUTO to enter into said agreements and subsequently breaching said agreements.

2.    The dispute between the parties stems from a Supply Agreement that the parties entered into in 2008, and clutch products that CLUTCH AUTO manufactured based on NAVISTAR's Electronic Data Interchange ("EDI") visibility and product forecasts adopted and maintained by NAVISTAR providing seller-buyer information, pursuant to which CLUTCH AUTO manufactured approximately $5.2 million worth of automotive clutches that conformed to NAVISTAR's requested specifications. When NAVISTAR denied its obligation to pay for said clutches, the parties engaged in settlement negotiations to resolve their dispute on certain terms.

3.      During those negotiations, NAVISTAR deliberately and intentionally made repeated false promises and misrepresentations, assuring CLUTCH AUTO of NAVISTAR's good faith intentions to continue their business relationship and to work with CLUTCH AUTO to sell CLUTCH AUTO's inventory.  CLUTCH AUTO reasonably relied on those false promises and misrepresentations and, based thereupon, subsequently agreed to and executed a settlement agreement and release of all claims that CLUTCH AUTO had against NAVISTAR up to that point in time.  However, NAVISTAR had a preexisting intention of defrauding CLUTCH AUTO of its right to payment, and at no time intended to honor its promises and representations.

4.      NAVISTAR's fraudulent inducement and subsequent contractual breach damaged CLUTCH AUTO, as CLUTCH AUTO had made huge financial investments over the course of several years in product development, testing, and manufacturing in order to meet NAVISTAR's EDI visibility and product forecast requirements as were provided by NAVISTAR to CLUTCH AUTO from time to time.  Therefore, CLUTCH AUTO seeks compensatory and punitive damages, and equitable relief in this action.

## The Parties

5.      Plaintiff CLUTCH AUTO is a corporation duly organized and existing under the laws of India, having its registered office 2-E/14 (First Floor), Jhandewalan Extension, New Delhi-110 055 India, and place of business at 12/4 Mathura Road, Faridabad, Haryana 121003, India.

6.      Defendant NAVISTAR, INC. is a Delaware corporation, located and doing business in the State of Illinois, and having its headquarters and principal place of business at 2701 Navistar Drive, Lisle, Illinois.

**Jurisdiction and Venue**

7.      Pursuant to 28 U.S.C. § 1332(a)(2), this Court has subject matter jurisdiction over the claims in this action that relate to breach of contract because this is a civil action between a citizen of a state (Illinois) and a citizen of a foreign country (India), and the matter in controversy exceeds the sum of $75,000.

8.      Venue in this District is proper because NAVISTAR transacts business in this District and is deemed to reside here.  Furthermore, a substantial part of the events giving rise to the claims alleged herein arose in this District because NAVISTAR's corporate headquarters are located in this District.

**The 2008 Supply Agreement**

9.      CLUTCH AUTO is in the business of manufacturing clutches for vehicles.

10.      NAVISTAR is a manufacturer of vehicles.

11.      On June 18, 2008, CLUTCH AUTO and NAVISTAR entered into a Supply Agreement whereby CLUTCH AUTO agreed to manufacture and supply clutches to NAVISTAR according to NAVISTAR's unique specifications.

12.      In order to meet NAVISTAR's EDI visibility and product forecast requirements, CLUTCH AUTO expended millions of dollars by way of financial investments over the course of several years in research and development, training, machinery, testing, hiring, and infrastructure costs, and CLUTCH AUTO manufactured millions of dollars worth of clutches based upon NAVISTAR's EDI visibility and product forecast requirements as were provided by NAVISTAR to CLUTCH AUTO from time to time.

13.    However, on February 24, 2011, NAVISTAR terminated the Supply Agreement.

**The Dispute Regarding Payment for Manufactured Products**

14.    At the time NAVISTAR terminated the Supply Agreement, CLUTCH AUTO had approximately $5.2 million worth of inventory of clutches that CLUTCH AUTO manufactured to NAVISTAR's specifications and brands pursuant to the Supply Agreement and based on NAVISTAR's EDI visibility and product forecasts.  However, NAVISTAR refused to accept shipment or pay for this inventory.

15.    CLUTCH AUTO was entitled to payment for its inventory of clutches that it manufactured for NAVISTAR pursuant to the Supply Agreement and based on NAVISTAR's EDI visibility and product forecasts, and CLUTCH AUTO demanded payment from NAVISTAR.  However, NAVISTAR refused to pay, and denied that it was obligated to pay CLUTCH AUTO for that inventory.

**The Parties' Negotiations and Settlement of the Dispute**

16.    On June 27, 2011, representatives of CLUTCH AUTO and NAVISTAR met in Naperville, Illinois.

17.    During the June 27, 2011 meeting, Persio Lisboa ("Lisboa"), Chief Procurement Officer of NAVISTAR, made several false promises and misrepresentations to Vijay Mehta ("Mehta"), CLUTCH AUTO's Chairman and Managing Director, assuring CLUTCH AUTO of NAVISTAR's good faith intentions to continue their business relationship and to work with CLUTCH AUTO to sell CLUTCH AUTO's inventory.

18.    On September 19, 2011, after several meetings and the exchange of significant correspondence setting forth their respective positions, representatives of CLUTCH AUTO and NAVISTAR met at NAVISTAR's headquarters in an attempt to amicably resolve the dispute

between the parties.

19.     During the September 19, 2011 meeting, Lisboa made several false promises and misrepresentations to Mehta, assuring CLUTCH AUTO of NAVISTAR's good faith intentions to continue their business relationship and to work with CLUTCH AUTO to sell CLUTCH AUTO's inventory.

20.     CLUTCH AUTO reasonably relied on those false promises and misrepresentations made by Lisboa during the June 27 and September 19, 2011 meetings and, based thereupon, agreed to a tentative agreement to settle the dispute.

21.     On November 9, 2011, Lisboa sent a draft settlement agreement to Mehta ("Letter Agreement").  (*See* November 9, 2011 Letter Agreement, attached hereto as Exhibit A).  The Letter Agreement was fully executed by the parties on November 10, 2011.

22.     The Letter Agreement provides, in part, that NAVISTAR agreed to pay for and accept delivery of $575,545 worth of clutches out of the approximately $5.2 million in inventory in CLUTCH AUTO's possession that CLUTCH AUTO manufactured for NAVISTAR pursuant to the Supply Agreement and based on NAVISTAR's EDI visibility and product forecasts. (Exhibit A, ¶¶ 1-3).

23.     The Letter Agreement also provides that "Navistar will engage in good faith negotiations for a new Service Parts supply agreement with CLUTCH AUTO on terms that are mutually agreeable to both parties."  (Exhibit A, ¶ 4).  Under this provision, NAVISTAR agreed to enter into a new supply agreement with CLUTCH AUTO whereby NAVISTAR would purchase clutches from CLUTCH AUTO as service parts for use in servicing existing vehicles (*i.e.*, not to be used in the production of new vehicles).  NAVISTAR acknowledged that CLUTCH AUTO's manufacturing processes and clutch products were of good quality such that

NAVISTAR wanted to continue to do business with CLUTCH AUTO.

24.    The Letter Agreement also expressed NAVISTAR'S intention to enter into a production parts supply agreement with CLUTCH AUTO for clutches that would be put in new vehicles.  (Exhibit A, ¶ 4).

25.    The Letter Agreement was contingent upon a written release of CLUTCH AUTO's claims against NAVISTAR arising out of NAVISTAR's failure to pay for the inventory of clutches that CLUTCH AUTO manufactured pursuant to the Supply Agreement.  (Exhibit A, ¶ 5).

26.    On November 11, 2011, a written Release of Claims by CLUTCH AUTO ("Release") was fully executed by the parties.  (*See* Release, attached hereto as Exhibit B).  The Release states that "[t]his document will serve as the written Release that is described in paragraph 5 of the November 9, 2011 Letter Agreement ...."  (Exhibit B).

27.    The Release provides that in consideration of NAVISTAR's compliance with the terms of the Letter Agreement, CLUTCH AUTO would provide NAVISTAR with a full release of all claims accruing up to that point in time arising out of or relating to CLUTCH AUTO's manufacture of clutches for NAVISTAR.  (Exhibit B).

28.    The Release also provides, in part:

> Pursuant to paragraph 4 in the November 9, 2011 Letter agreement regarding the Parties' agreement to negotiate in good faith the possible terms of a Supply Agreement for the purchase and sale of CLUTCH AUTO products to be resold as Service Parts, **Navistar agrees to work with CLUTCH AUTO to sell as Service Parts the clutch products already built by CLUTCH AUTO and identified in the July 12, 2011 Letter as inventory from EDI visibility and forecasts,** and, except as otherwise set forth in this Agreement, Navistar shall have no obligation to order or pay for any clutch products (including such inventory) from Clutch Auto **until such inventory has been sold by Clutch Auto**….

(Exhibit B) (emphasis added).

29.     Therefore, under the terms of the Letter Agreement and Release, NAVISTAR explicitly promised to enter into a new service parts supply agreement with CLUTCH AUTO. Further, NAVISTAR promised to work with CLUTCH AUTO to sell the remaining inventory as service parts for existing vehicles through NAVISTAR's authorized dealers. Indeed, NAVISTAR represented that CLUTCH AUTO's products would be included in NAVISTAR's business plan for future sales.

30.     On May 4, 2008, during a meeting at NAVISTAR's headquarters, representatives from NAVISTAR, including Andy Zielinksi, Steve Giglio, and Marie Asbury provided CLUTCH AUTO with market share figures based on its own historical sales, projected sales, and market trends that indicated steady, ever-increasing sales of CLUTCH AUTO's products as service parts. ("Business Plan"). (*See* NAVISTAR's Distribution Business Plan, attached hereto as Exhibit C). Specifically, NAVISTAR described a 174% increase in sales of CLUTCH AUTO clutches between 2008 and 2009 (*i.e.,* from $3.1 to $8.5 million); a 41% increase between 2009 and 2010 (*i.e.,* from $8.5 to $12 million); a 42% increase between 2010 and 2011 (*i.e.,* from $12 to $17 million); and a 29% increase between 2011 and 2012 (*i.e.,* from $17 to $22 million).

31.     Not only did CLUTCH AUTO have an inventory of clutches worth approximately $5.2 million that NAVISTAR refused to pay for, CLUTCH AUTO had made huge financial investments over many years in product development, testing, training, marketing, and technical materials so that it could have product immediately available for NAVISTAR's EDI visibility and product forecasts.

32.     CLUTCH AUTO agreed to release its valid claims against NAVISTAR based upon NAVISTAR's explicit representations. NAVISTAR's promises of future business with CLUTCH AUTO induced CLUTCH AUTO to release its valid claims concerning NAVISTAR's

obligation to pay for the entire inventory of clutches, as CLUTCH AUTO had built-up a substantial inventory and had the manufacturing infrastructure in place to meet the needs of future sales under the Business Plan.

### Navistar's Failure to Abide by the Terms of the Agreements

33.     Despite NAVISTAR's promises in the Letter Agreement and Release to work with CLUTCH AUTO to sell its inventory of clutches manufactured for NAVISTAR, NAVISTAR did not make any effort to do so.

34.     CLUTCH AUTO's products met and are meeting all of NAVISTAR's specifications and standards, and CLUTCH AUTO's products were and are less expensive than its competitor's products.

35.     NAVISTAR has purchased none of CLUTCH AUTO's existing inventory or any other products from CLUTCH AUTO.  Instead, NAVISTAR has been purchasing clutches for use as service parts from CLUTCH AUTO's competitor rather than purchasing the products from CLUTCH AUTO, in complete breach of its promises and obligations undertaken in the Letter Agreement and Release.

### COUNT I
#### (Breach of Contract)

NOW COMES Plaintiff CLUTCH AUTO LIMITED, by and through counsel, and complains of Defendant NAVISTAR, INC., as follows:

1.     Plaintiff repeats and realleges paragraphs one (1) through thirty-five (35) above as paragraphs one (1) through thirty-five (35) of this Count I, with the same force and effect as though fully set forth herein.

36.     NAVISTAR's promise "to work with CLUTCH AUTO to sell as Service Parts the clutch products already built by CLUTCH AUTO" was essential to CLUTCH AUTO's

ability to sell its remaining inventory, as CLUTCH AUTO manufactured said inventory according to NAVISTAR's unique specifications and brands, and much of that inventory bears trademarks, logos, or markings specific to NAVISTAR's specifications and brands.

37.     CLUTCH AUTO needed NAVISTAR's assistance to sell the large amount of inventory that CLUTCH AUTO manufactured specifically for NAVISTAR, as CLUTCH AUTO could not sell it to anyone else other than NAVISTAR and NAVISTAR's authorized dealers, but CLUTCH AUTO could not sell said inventory directly to or through NAVISTAR's authorized dealers.  Thus, CLUTCH AUTO could not sell said inventory without NAVISTAR's assistance.

38.     Under the terms of the Release, CLUTCH AUTO's sale as service parts the clutch products already built by CLUTCH AUTO is a condition precedent necessary to trigger NAVISTAR's obligation to order or pay for any clutch products from CLUTCH AUTO.

39.     NAVISTAR intentionally and wrongfully prevented the occurrence of the condition precedent in the Release by intentionally and wrongfully failing to work with CLUTCH AUTO to sell as service parts the inventory of clutches already built by CLUTCH AUTO.

40.     NAVISTAR's failure to work with CLUTCH AUTO to sell as service parts the inventory of clutches already built by CLUTCH AUTO and failure to purchase any of CLUTCH AUTO's inventory of clutches, while instead purchasing clutches from CLUTCH AUTO's competitor for use as service parts, constitute breaches of the Letter Agreement and Release.

41.     The Release grants NAVISTAR broad discretion in terms of NAVISTAR's obligation to work with CLUTCH AUTO to sell as service parts the inventory of clutches already built by CLUTCH AUTO.  NAVISTAR's failure to reasonably exercise its discretion to work with CLUTCH AUTO to sell said inventory, and NAVISTAR's failure to purchase any of

CLUTCH AUTO's inventory of clutches, also constitute breaches of its duty of good faith and fair dealing. NAVISTAR acted unreasonably, without proper motive, and capriciously.

42.     CLUTCH AUTO has performed all of its obligations under the Letter Agreement and Release.

43.     CLUTCH AUTO has been damaged by NAVISTAR's breaches in an amount in excess of $75,000.

WHEREFORE, Plaintiff CLUTCH AUTO LIMITED prays for judgment against Defendant NAVISTAR, INC. in an amount in excess of seventy five thousand dollars ($75,000.00), plus attorney's fees and costs, and for any other relief deemed just under the circumstances.

## COUNT II
### (Promissory Fraud)
#### *Pleaded in the alternative to Count I*

1.     Plaintiff repeats and realleges paragraphs one (1) through thirty-five (35) above as paragraphs one (1) through thirty-five (35) of this Count II, with the same force and effect as though fully set forth herein.

36.     Starting in April 2011, CLUTCH AUTO repeatedly informed NAVISTAR of its claim against NAVISTAR for the monies owed to CLUTCH AUTO pursuant to the Supply Agreement.

37.     NAVISTAR knew of the severe financial harm to CLUTCH AUTO caused by its refusal to pay for the clutches that CLUTCH AUTO had manufactured for NAVISTAR based on the EDI visibility and product forecasts. NAVISTAR knew that because CLUTCH AUTO had already invested millions of dollars in research, development and infrastructure—including a factory line dedicated to production of clutches solely for NAVISTAR—to ensure that it would

have product immediately available for NAVISTAR's EDI visibility and forecasts, NAVISTAR's promise of future sales under the Business Plan would be more lucrative to CLUTCH AUTO than obtaining a judgment against NAVISTAR for its failure to pay for CLUTCH AUTO's existing inventory of clutches.

38.     With this knowledge, NAVISTAR developed a scheme to induce CLUTCH AUTO to release its valid claims for actual and consequential damages against NAVISTAR by making false promises that it did not intend to honor.

39.     In order to accomplish its scheme to induce CLUTCH AUTO to execute the Letter Agreement and Release, NAVISTAR made repeated false promises and misrepresentations to CLUTCH AUTO, including the following:

(a)     During a meeting held on June 27, 2011, in Naperville, Illinois, Lisboa represented to Mehta that NAVISTAR would work with CLUTCH AUTO to sell as service parts the clutch products already built by CLUTCH AUTO;

(b)     During a meeting held on June 27, 2011, in Naperville, Illinois, Lisboa represented to Mehta that after NAVISTAR successfully assisted CLUTCH AUTO in selling as service parts the clutch products already built by CLUTCH AUTO, NAVISTAR would work with CLUTCH AUTO to sell its remaining inventory as service parts for existing vehicles through NAVISTAR's authorized dealers;

(c)     During a meeting held on June 27, 2011, in Naperville, Illinois, Lisboa represented to Mehta that after NAVISTAR successfully assisted CLUTCH AUTO in selling as service parts the clutch products already

11

built by CLUTCH AUTO, NAVISTAR would buy CLUTCH AUTO's products under a new service parts agreement;

(d)    During a meeting held on June 27, 2011, in Naperville, Illinois, Lisboa represented to Mehta that after NAVISTAR successfully assisted CLUTCH AUTO in selling as service parts the clutch products already built by CLUTCH AUTO, NAVISTAR would work with CLUTCH AUTO to reach the target sales projections in NAVISTAR's Business Plan (Exhibit C);

(e)    During a meeting held on June 27, 2011, in Naperville, Illinois, Lisboa represented to Mehta that after NAVISTAR successfully assisted CLUTCH AUTO in selling as service parts the clutch products already built by CLUTCH AUTO, and after NAVISTAR satisfactorily bought and sold CLUTCH AUTO's products under a new service parts agreement, NAVISTAR would enter into a production parts supply agreement with CLUTCH AUTO for the purchase and sale of its clutches to be put in new vehicles;

(f)    During a meeting held on June 27, 2011, in Naperville, Illinois, Lisboa represented to Mehta that NAVISTAR intended to have a successful, long-term business relationship wherein CLUTCH AUTO would sell a substantial amount of clutch products to NAVISTAR and NAVISTAR's customers as set forth in the sales projections in NAVISTAR's Business Plan (Exhibit C);

12

(g)     During a meeting held on September 19, 2011 at NAVISTAR's headquarters, at NAVISTAR's headquarters, Lisboa represented to Mehta that he desired to repair the parties' long-term, mutually-beneficial relationship, and asked that Mehta not harbor any ill will toward him or Navistar, and that Mehta trust Lisboa to resolve all outstanding issues;

(h)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that NAVISTAR would sell CLUTCH AUTO's clutch products in CLUTCH AUTO's own brand as service parts in North America, and in a well-established international brand in other global markets;

(i)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that NAVISTAR's marketing team would develop a marketing strategy for CLUTCH AUTO's service parts immediately after a new service parts agreement was executed by the parties;

(j)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that, because of the parties' close relationship, CLUTCH AUTO has "many champions" within NAVISTAR to support the implementation of a new service parts agreement;

(k)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that a new service parts agreement would be "smooth and easy" because Lisboa had already

received the necessary "approvals" from NAVISTAR, and CLUTCH AUTO was already well established in NAVISTAR's system;

(l)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that, "after the dust settles," NAVISTAR would include CLUTCH AUTO's products in its production parts business;

(m)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that CLUTCH AUTO's $5.2 million in inventory is a small portion of the total clutches that NAVISTAR buys, and that NAVISTAR would easily be able to cater to CLUTCH AUTO's sales needs via NAVISTAR's dealer network;

(n)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that NAVISTAR would work with CLUTCH AUTO to sell as service parts the clutch products already built by CLUTCH AUTO;

(o)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that after NAVISTAR successfully assisted CLUTCH AUTO in selling as service parts the clutch products already built by CLUTCH AUTO, NAVISTAR would work with CLUTCH AUTO to sell its remaining inventory as service parts for existing vehicles through NAVISTAR's authorized dealers;

(p)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that after NAVISTAR

14

successfully assisted CLUTCH AUTO in selling as service parts the clutch products already built by CLUTCH AUTO, NAVISTAR would buy CLUTCH AUTO's products under a new service parts agreement;

(q)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that after NAVISTAR successfully assisted CLUTCH AUTO in selling as service parts the clutch products already built by CLUTCH AUTO, NAVISTAR would work with CLUTCH AUTO to reach the target sales projections in NAVISTAR's Business Plan (Exhibit C);

(r)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that after NAVISTAR successfully assisted CLUTCH AUTO in selling as service parts the clutch products already built by CLUTCH AUTO, and after NAVISTAR satisfactorily bought and sold CLUTCH AUTO's products under a new service parts agreement, NAVISTAR would enter into a production parts supply agreement with CLUTCH AUTO for the purchase and sale of its clutches to be put in new vehicles; and

(s)     During a meeting held on September 19, 2011, at NAVISTAR's headquarters, Lisboa represented to Mehta that NAVISTAR intended to have a successful, long-term business relationship wherein CLUTCH AUTO would sell a substantial amount of clutch products to NAVISTAR and NAVISTAR's customers as set forth in the sales projections in NAVISTAR's Business Plan (Exhibit C);

15

40.     NAVISTAR's aforementioned deliberate and intentional false promises and misrepresentations were material to CLUTCH AUTO's decision to execute the Letter Agreement and Release, and CLUTCH AUTO would not have executed the Letter Agreement and Release but for those false promises and misrepresentations.

41.     At the time NAVISTAR made said false promises and misrepresentations, NAVISTAR knew them to be false, and had no intention of honoring them. NAVISTAR concealed this fact from CLUTCH AUTO.

42.     NAVISTAR made said false promises and misrepresentations pursuant to a larger scheme to defraud CLUTCH AUTO out of the monies owed to it by NAVISTAR and deprive CLUTCH AUTO of its valid and meritorious claims against NAVISTAR.

43.     CLUTCH AUTO reasonably relied upon NAVISTAR's misrepresentations to conclude that future sales from new supply agreements for service and production parts would be more lucrative than obtaining a judgment against NAVISTAR for the amount of the existing inventory.

44.     CLUTCH AUTO reasonably relied upon NAVISTAR's aforementioned promises and misrepresentations as the basis for signing the Letter Agreement and Release, which caused CLUTCH AUTO to incur significant financial damages.

WHEREFORE, Plaintiff CLUTCH AUTO LIMITED prays that this Court enter judgment in its favor, as follows:

    a.      Compensatory damages in an amount in excess of seventy five thousand dollars ($75,000.00);

    b.      Punitive damages;

    c.      Rescission of the Letter Agreement and Release, such that the parties are restored to their pre-contract positions;

16

d.      Attorney's fees and costs; and

e.      Any other relief that this Court may deem just under the circumstances.

## **JURY DEMAND**

Plaintiff demands a trial by a 12-person jury on all issues so triable.

Plaintiff CLUTCH AUTO LIMITED,

By:  __s/ Thomas A. Zimmerman, Jr.__
        Thomas A. Zimmerman, Jr. (IL# 6231944)
        Adam M. Tamburelli (IL# 6292017)
        Frank J. Stretz (IL# 6310264)
        ZIMMERMAN LAW OFFICES, P.C.
        77 West Washington Street, Suite 1220
        Chicago, Illinois 60602
        (312) 440-0020
        www.attorneyzim.com

Counsel for Plaintiff



**TRUCK GROUP**

Navistar, Inc.
2601 Navistar Drive
Lisle, IL 60532 USA

P : 331-332-3806
E : persio.lisboa@navistar.com

Persio Lisboa
Chief Procurement Officer

November 9, 2011

Mr. Vijay Mehta
Chairman & Managing Director
Clutch Auto Limited
12/4 Mathura Road
Faridabad Haryana 121 003
India

In our meeting in my office of September 19, 2011, I agreed to the following, and I am clear that you agreed, also.

1. Navistar will accept delivery of the remainder of clutch products covered by Purchase Order 40100-0000003375 in the amount of $431,545. (This results in a total of $948,349 for the Service Parts inventory to which Navistar has committed and is willing to commit).

2. Navistar will not use the MaxxPower brand to sell these clutches, but will sell under the Clutch Auto brand. All references to Maxx Power must be removed by Clutch Auto from the clutches referred to in paragraph 1 above prior to shipment to Navistar.

3. The Purchase Order 40100-0000003129 for $144,000 was not part of the agreement made in my office on September 19, 2011; however, Navistar will accept delivery and pay for these clutches to help bring this matter to closure.

4. Navistar will engage in good faith negotiations for a new Service Parts supply agreement with Clutch Auto on terms that are mutually agreeable to both parties. At this time, Navistar will not commit to negotiate a supply agreement for clutches to be used in production. If Navistar determines it is completely satisfied with the success of the Service Parts arrangement and the quality of the clutch products it is receiving, Navistar may consider entering into negotiations for a production supply agreement at some time in the future.

5. Navistar requires a complete written release of all other claims and potential claims by Clutch Auto against Navistar in a form similar to that Navistar provided in its document dated October 19, 2011.

Navistar is not willing to make any proposals beyond the items outlined in this document. Please understand that this proposal must be accepted in its entirety without any revisions, or, in the alternative, Navistar is willing to stand by its decision not to continue to do business with Clutch Auto in the future, as is its right to do following the expiration of the Supply Agreement earlier this year.



**Exhibit A**

Page 2

Upon approval and receipt of signatures, Navistar will wire transfer the $431,545 and $144,000 within 5 business days to Clutch Auto's account.

As an expert in the field of clutch product engineering, design and manufacture, it is the responsibility of Clutch Auto to keep pace with any and all technologies required for state-of-the-art industry practices and product development. It will not be Navistar's responsibility to notify Clutch Auto of clutch product changes by competitors, and Navistar will not provide specifications or drawings that reflect or incorporate such changes. Navistar's only responsibility will be to notify Clutch Auto of performance requirements for our vehicles. Any and all costs associated with modifications required for Clutch Auto to design, develop and test a derivative or new product will be the responsibility of Clutch Auto. This is consistent with Navistar's expectations of other suppliers whom Navistar looks at as experts in their particular field or industry.

Vijay, it is my sincere desire to make the business relationship between our two companies successful. One area we can offer our assistance to Clutch Auto is to help in assessing and suggesting improvements with your quality system. We would like to continue the quality systems effort that was performed at your facility in the past several years so that both of our companies may benefit.

I look forward to your acceptance of the terms above and our next meeting to conclude these negotiations. Our team is anxious to begin the conversation for the Service Parts agreement.

Thank you and regards,

Nov 10, 2011



**NAVISTAR**    Navistar, Inc.
4201 Winfield Road
Warrenville, IL 60555 USA

November 10, 2011

Release of Claims by Clutch Auto

Pursuant to the signed letter agreement dated November 9, 2011 ("November 9, 2011 Letter Agreement"), executed by Persio Lisboa on behalf of Navistar, Inc. ("Navistar") and by Vijay Mehta on behalf of Clutch Auto Limited ("Clutch Auto"), the parties have agreed to resolve all outstanding claims and disputes brought by Clutch Auto against Navistar, including, but not limited to, the claims stated in the July 12, 2011 letter from Tom Zimmerman on behalf of Clutch Auto ("July 12, 2011 Letter"). This document will serve as the written Release that is described in paragraph 5 of the November 9, 2011 Letter Agreement and has been agreed to by the parties.

In consideration for payment by Navistar to Clutch Auto the amount of $576,173 as set forth in in paragraphs 1 and 3 of the November 9, 2011 Letter Agreement and for other valuable consideration provided by Navistar as set forth in the November 9, 2011 Letter Agreement, Clutch Auto, on behalf of its affiliates, subsidiaries, related companies, representatives, and assigns, does hereby release and forever discharge Navistar and its respective corporate predecessors or successors-in-interest, assigns, and present or former directors, officers, agents, employees, shareholders, stockholders, affiliates, subsidiaries, related business entities, partners, representatives, beneficiaries, attorneys, and insurers ("Releasees"), from all claims, demands, expenses, costs, attorneys' fees, debts, and any other causes of action, known or unknown, past or present, asserted or that could have been asserted, arising out of, or relating to, the manufacture and assembly of clutches, or purchase of components for clutches, including, but not limited to the claims described in the July 12, 2011 Letter or any other action of Releasees that caused any damages allegedly suffered by Clutch Auto, and any alleged act or omission of Releasees that purportedly interfered with or adversely affected any interest, pecuniary or otherwise, of Clutch Auto. Pursuant to paragraph 4 in the November 9, 2011 Letter Agreement regarding the Parties' agreement to negotiate in good faith the possible terms of a Supply Agreement for the purchase and sale of Clutch Auto products to be resold as



**Exhibit B**

Service Parts, Navistar agrees to work with Clutch Auto to sell as Service Parts the clutch products already built by Clutch Auto and identified in the July 12, 2011 Letter as inventory from EDI visibility and forecasts, and, except as otherwise set forth in this Agreement, Navistar shall have no obligation to order or pay for any clutch products (including such inventory) from Clutch Auto until such inventory has been sold by Clutch Auto, and any order for clutch products that is ordered by Navistar and manufactured by Clutch Auto that is not part of such inventory identified in the July 12, 2011 Letter shall not reinstate the claims and matters released in this Agreement, including, but not limited to, the claims to pay for such inventory from EDI visibility and forecasts.

Agreed:  Navistar, Inc.

By: _____

Title: <u>VP & Chief Procurement Officer</u>

Date: <u>Nov-10-2011</u>

Clutch Auto Limited

By: _____

Title: ___CMD___

Nov 11, 2011

# Clutch Auto Limited and
# Navistar, Inc.
# Distribution Business Plan

Business Team Leader: Andy Zielinski
Product Manager: Steve Giglio
Supply Manager: Marie Asbury

NAVISTAR PARTS

**Exhibit C**

# Target – Service Parts only

**NAVISTAR PARTS**

| Product (Service Parts) | Current Market | CAL Current Share | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|
| Generation A | $30 mil | $5 mil | $2 mil | $5.5 mil | $6 mil | $6.5 mil | $7 mil |
| Generation B (non production) | | | $1 mil | $2 mil | $4 mil | $7 mil | $10 mil |
| Generation B (production) | $310 mil | $0 | $0.1 mil | $1 mil | $2 mil | $3.5 mil | $5 mil |
| Total | $340 mil | $5 mil | $3.1 mil | $8.5 mil | $12 mil | $17 mil | $22 mil |

©2007 Navistar International Corporation. All Rights Reserved.

7