UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLUTCH AUTO LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-9564 |
| | ) | |
| v. | ) | District Judge Der-Yeghiayan |
| | ) | |
| NAVISTAR, INC., | ) | Magistrate Judge Mason |
| | ) | |
| Defendant, | ) | |

**CLUTCH AUTO LIMITED'S RESPONSE TO
<u>NAVISTAR, INC.'S MOTION FOR SANCTIONS</u>**

The motion should be denied. Navistar gave incomplete facts, even removing pages from a transcript of Clutch Auto's deposition. Navistar omitted Seventh Circuit holdings governing this motion. Even the title of Navistar's motion, "willful destruction of evidence," is a false statement.

<u>Facts</u>

Clutch Auto admittedly is not an IT savvy company. (Exh. A at 51:12-13.) It only uses computers for some accounting and for limited emails[1], and does not have a versatile IT network. (Exh. A at 51:13-16.) The company is in transition to electronic mail. (Exh. A at 127:8-10.) Clutch Auto does not have a head of IT, and the company does not even have that position. (Exh. A at 183:10-16; Exh. A at 347:10-13.)

Clutch Auto's procedure is that electronic communications are immediately and simultaneously printed out and hard copies are then maintained indefinitely. (Exh. A at 21:19-22:11; Exh. A at 53:8-14; Exh. A at 61:13-16; Exh. A at 62:8-10; Exh. A at 93:21-94:9; Exh. A at

---

[1] Clutch Auto does not have electronic communications with all of its customers. Rather, Clutch Auto only communicates via email with customers who initiate emails to the company. (Exh. A at 102:1-103:9; Exh. A at 107:20-108:7.) But even with customers who communicate via email, hard copies are created, and that is the basis of Clutch Auto's operations. (Exh. A at 105:20-24.)

99:15-100:16; Exh. A at 108:18-109:23; Exh. A at 138:5-15; Exh. A at 139:13-17; Exh. A at 172:11-16; Exh. A at 185:3-21; Exh. A at 283:16-285:10.) This print out procedure is universal policy, and the hard copies are the permanent records of the company. (Exh. A at 94:3-6.) Clutch Auto's starting point in its business is hard copies, not electronic versions of documents. (Exh. A at 53:14-15; Exh. A at 69:21-24.) Nobody at Clutch Auto touches the hard copies, there's no tampering of hard copies, and **there is no destruction of them**. (Exh. A at 21:12-14; Exh. A at 343:23.) If there is a page missing from the hard copies, it is an isolated imperfection in the storage of paper. (Exh. A at 329:8.)

For this litigation, all Clutch Auto computers were searched. (Exh. A at 150:18.) Clutch Auto has only had two servers, one in Faridabad, and one in New Delhi. The server in Faridabad was a blank server, was destroyed in a labor riot, and was then thrown in the garbage by the police. (Exh. A at 122:8-9; Exh. A at 128:4-24; Exh. A at 240:24-241:5.) The other server in New Delhi was only used for accounting, and it contains no information related to Navistar. (Exh. A at 171:11-19.) Dozens of Clutch Auto's desktop computers are not even in use. (Exh. A at 40:19-22; Exh. A at 47:8; Exh. A at 47:11; Exh. A at 147:18-24.)

With respect to computer records of Clutch Auto employees who have departed the company, Clutch Auto has all emails from Mr. Sood's computer. (Exh. A at 88:16-21; Exh. A at 93:23-24.) Clutch Auto has all of the emails relating to Navistar from Mr. Prasad's computer. (Exh. A at 92:20-93:23; Exh. A at 94:23-95:6.) All data from these individual's computers were retrieved and printed out. (Exh. A at 238:4-239:13; Exh. A at 349:1-13.)

In addition, data from Y.R. Malik's computer was retrieved and printed out. (Exh. A at 246:8-9; Exh. A at 349:1-13.) Finally, Sanjeev Gupta, Clutch Auto's United States representative, produced his ESI. (Exh. A at 245:9-12.)

- 2 -

2398907\6\24100\54057

With respect to how Clutch Auto found its ESI vendor for this litigation, Clutch Auto asked contacts for an ESI vendor, and obtained a referral who could meet the time deadlines. (Exh. A at 32:1-38:18.) Clutch Auto gave the ESI vendor the search terms and told the vendor to follow the instructions to the letter. (Exh. A at 350:19-351:22.) The ESI vendor was researched before it was hired. (Exh. A at 352:12-353:17.) The Indian ESI vendor gave a fixed quote for about $2,000, while a vendor in the United States gave an estimate in the form of a range of $30,000-$84,000. (Exh. A at 38:21-39:7.) The Indian ESI vendor was subsequently hired, worked around the clock with Clutch Auto employees, and accomplished the ESI production. (Exh. A at 144:11-16; Exh. A at 145:13-146:8; Exh. A at 152:14-23; Exh. A at 241:18-19; Exh. A at 252:7-253:15; Exh. A at 269:4-6; Exh. A at 356:8-17.)

Clutch Auto has all of the communications with Navistar without interruption, and all of the physical records. (Exh. A at 57:9-10; Exh. A at 201:20-21.) Whatever was stored, Clutch Auto has retrieved and produced to Navistar. (Exh. A at 84:6-12; Exh. A at 85:16-21.) Clutch Auto has furnished anything concerning Navistar. (Exh. A at 177:2-4.) Clutch Auto has furnished everything concerning the search terms Navistar gave. (Exh. A at 177:2-4.) Clutch Auto has collected all of its papers related to Navistar and has produced them to Navsitar. (Exh. A at 135:17-136:3; Exh. A at 295:14.) Clutch Auto has produced all of the documents in its possession responsive to discovery requests. (Exh. A at 260:6-261:22; Exh. A at 262:24-264:23; Exh. A at 270:7-9; Exh. A at 271:5-11.)

Argument

In the Northern District of Illinois, a party's failure to issue a litigation hold is not *per se* evidence that the party breached its duty to preserve evidence. *Jones v. Bremen High Sch. Dist.*

- 3 -
2398907\6\24100\54057

*228*, 2010 WL 2106640 at *6 (N.D. Ill. May 25, 2010).[2] Instead, reasonableness is the key to determining whether a party breached its duty to preserve evidence. *Id*. When evaluating whether to impose a sanction, a court considers whether there was a breach of the duty to preserve or produce documents, the level of culpability for the breach, and the prejudice that results from the breach, if any. *Zang v. Alliance Fin. Servs. of Ill., Ltd.*, 875 F.Supp.2d 865, 885 (N.D. Ill. 2012); *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 2013 WL 4950802 at *3 (N.D. Ind. Sept. 10, 2013).

A court only applies a sanction "proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996); *Maynard v. Nygren,* 332 F.3d 462, 467-68 (7th Cir. 2003); *G & S Metal Consultants, Inc.*, 2013 WL 4950802 at *3. Dismissal of a claim as a discovery sanction is the most draconian of remedies, and the Seventh Circuit pledges to be "vigilant" in its review of plaintiff's claims dismissed as a sanction. *Maynard*, 332 F.3d at 467. Dismissal is a "harsh sanction" to "be employed only as a last resort." *Rice v. City of Chicago*, 333 F.3d 780, 786 (7th Cir. 2003)(reversing district court's dismissal even when plaintiff failed to obey discovery deadlines). The standard of proof for dispositive sanctions is clear and convincing evidence of willfulness. *Maynard,* 332 F.3d at 468.

Before imposing dismissal as a sanction for a discovery violation, the Seventh Circuit demands more than a showing that discoverable material was lost: "For starters, a showing of willfulness, bad faith, or fault is necessary[.]" *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011); *Maynard,* 332 F.3d at 467; *see also*, *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212 (1958)("serious

---

[2] Pursuant to the Court's Case Management Procedures on its website, unpublished opinions are attached as exhibits.

constitutional questions" compel conclusion that dismissal may not be imposed as a discovery sanction absent a showing of willfulness, bad faith, or fault). "Bad faith requires the intent to hide unfavorable information." *Jones*, 2010 WL 2106640 at *6.

"Pursuant to *Maynard,* before dismissing a case, the Court must consider and explain why lesser sanctions would be inappropriate because sanctions must be proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *G & S Metal Consultants, Inc.*, 2013 WL 4950802 at *3. Indeed, even where the Court feels a party may be attempting to "manipulate the court into acting in its favor by rebellious refus[al] to follow rules and order of the Court," dismissal is not an appropriate sanction. *Allison v. City of Bridgeport, Ill.*, 2011 WL 499941 at *2 (S.D. Ill. Feb. 8, 2011)(rejecting Report and Recommendation of magistrate for dismissal as a discovery sanction).

Likewise, the imposition of an adverse inference instruction takes more than just negligence or mistake resulting in the loss of evidence. "In order to draw an inference that the missing documents contained information adverse to the defendants, [plaintiff] must demonstrate that the defendants **intentionally destroyed the documents in bad faith**." *Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428 (7th Cir. 2010)(bold added); *Fass v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008). Again, "[b]ad faith requires the intent to hide unfavorable information." *Jones*, 2010 WL 2106640 at *6.

Even where a party acted in bad faith, lesser sanctions are preferred. *See*, *e.g.*, *Northington v. H & M Int'l*, 2011 WL 663055 at *13 (N.D. Ill. Jan. 12, 2011)(dispositive sanction inappropriate where party failed to implement any plan to preserve ESI resulting in the probable loss of discoverable material, and failed to issue a litigation hold or employ any system for preserving more than a minimal amount of documentation), *report and recommendation adopted*,

- 5 -

2011 WL 662727 at *1 (N.D. Ill. Feb. 14, 2011); *Sloan Valve Co. v. Zurn Indus., Inc.*, 2012 WL 1886353 at *12-15 (N.D. Ill. May 23, 2012)(denying motion for default and adverse inference where party failed to implement litigation hold or document retention); *Jones*, 2010 WL 2106640 at *9 (denying adverse inference where party's "attempts to preserve evidence were reckless and grossly negligent").

Turning to the present case, the present facts fall far short of warranting dismissal or any other sanction. First, reasonableness is the key to determining whether a party breached its duty to preserve evidence. *Jones*, 2010 WL 2106640 at *6. Clutch Auto's conduct was reasonable. All electronic communications and files at Clutch Auto were immediately printed out and permanently stored even without a litigation hold. This was a reasonable method of preserving emails. While it may be inefficient by American standards, the information itself was maintained, and Clutch Auto never destroyed it. Navistar's argument, that a failure to issue a formal litigation hold automatically warrants dismissal, is simply contrary to established law. *See*, *Jones*, 2010 WL 2106640 at *6.

Second, there has been no showing of bad faith by Clutch Auto. "Bad faith requires the intent to hide unfavorable information." *Jones*, 2010 WL 2106640 at *6. Despite taking a 366 page deposition of Clutch Auto's Fed.R.Civ.P. 30(b)(6) designee, Navistar still cannot point to any intent by Clutch Auto to hide unfavorable information. In its brief, Navistar gave no citation showing Clutch Auto's intent to intent to hide anything. And Navistar has not come close to meeting a clear and convincing standard for willfulness.

Third, Navistar notes that its electronic discovery vendor charged it over $300,000, which was more than Clutch Auto paid its vendor. (Doc. 115 at p. 8, fn 5.) Clutch Auto shopped the ESI project to vendors in the United States and in India, and found a vendor in the United States with

a starting estimate at $30,000, and another vendor in India giving a quote for $2,000.[3] It was entirely permissible for Clutch Auto to use the Indian vendor at a lesser cost. Courts do not micro-manage which vendors parties choose in litigation or legislate how much a party should pay a vendor, but that is Navistar's implicit argument. If Navistar's electronic discovery vendor charged it over $300,000, Navistar should consider less expensive vendors, not argue others incur similar charges.

Fourth, even if there is some document Clutch Auto does not have, Navistar failed to show prejudice. Navistar argues that Clutch Auto destroyed correspondence between Clutch Auto and other North American customers. (Doc. 115 at p. 1 and 13.) But Navistar identifies no specific records which Clutch Auto destroyed. Further, Navistar fails to explain how or why Clutch Auto should have known that communications with third parties uninterested in this dispute would somehow become relevant here. Navistar never sent a litigation hold letter to Clutch Auto identifying other North American customers relevant to this case, or asked Clutch Auto to preserve some unknown communications.

In addition, Clutch Auto questions how important correspondence with other customers ever was to Navistar. If Navistar believed documents exchanged between Clutch Auto and Haldex, for example, were central and critical to Navistar's case, Navistar would simply have sent a subpoena to Haldex for the records. Navistar had months to do so, but did not, illustrating the purported criticalness of missing Haldex records is just a manufactured argument by Navistar for purposes of bringing this motion.

---

[3] Labor rates are drastically cheaper in India than in the United States. *See e.g.*, http://articles.economictimes.indiatimes.com/2014-03-12/news/48154256_1_towers-watson-china-labour-costs; http://www.kpoexperts.com/why-india/why-choose-india.htm (both viewed on May 22, 2014).

Further, Clutch Auto maintains printouts of its email communications. Accordingly, Navistar is really debating whether it is entitled to emails with Clutch Auto's other North American customers in electronic format or paper format. That is not the basis for dismissing a lawsuit. In its motion on page 13, Navistar identifies one complete email string, and then argues there might be other emails, and because there might be others, the entire case should be dismissed. But there might not be any other emails; it may be that there were phone calls or personal visits or nothing at all. Or it might be that any other emails were already produced in paper form. Navistar is just wildly speculating, and based on its speculation, Navistar is asking the Court to dismiss the entire lawsuit.

A final point on this topic – if Clutch Auto was acting in bad faith or willfully not producing discovery, Navistar would not have Exhibit M to its motion. Navistar's argument is bizarre because it claims that Clutch Auto did not preserve emails helpful to Navistar, and then points to an email Clutch Auto preserved and produced to Navistar. Under Navistar's reasoning, anyone engaged in discovery, whether electronic or otherwise, could simply point to a document, assert there might be other documents not produced, and then demand the Court dismiss or default the entire case. This bizarre argument would exist whether the discovery was paper or electronic.

Fifth, Navistar asserts that some sanction should issue because Clutch Auto was willfully blind in presenting its corporate witness for the Fed.R.Civ.P. 30(b)(6) deposition. (Doc. 115 at p. 6, fn 3.) Navistar leaves out that the Clutch Auto took this matter so seriously that it designated the company's Chairman and Managing Director as the witness, and that the Chairman prepared for a "tremendous amount of time," for "Hours and hours. I can't even count." (Exh. A at 9:23; Exh. A at 347:1-3.) Navistar also leaves out that Clutch Auto had no head of IT, and the company

2398907\6\24100\54057

does not even have that position. (Exh. A at 183:10-16; Exh. A at 347:10-13.) Accordingly, Navistar's argument that Clutch Auto was willfully blind was simply false.

Sixth, Navistar also argues that the format of Clutch Auto's ESI production was wrong. (Doc. 115 at p. 6.) But the parties expressly agreed acceptable formats for production included searchable PDF, (doc. 27 at p.4, ¶ 3), which was the format Clutch Auto used to produce its records. That format is so ubiquitous that even the federal court system uses searchable PDF for its docket filings. There was nothing wrong with PDF format.

Seventh, Navistar claims that hard copies were manipulated. (Doc. 115 at p. 9.) But the hard copy documents which Clutch Auto had clipped together and produced were Clutch Auto's response to various requests for production. Navistar is mixing apples and oranges by inserting any issues it has with Clutch Auto's document production into its motion concerning purported ESI failures warranting dismissal of an entire case.

Eighth, Navistar claims that it has met every discovery deadline and timely served discovery responses, while Clutch Auto has not. (Doc. 115 at p. 10.) To the contrary, Navistar has not answered discovery as recently as this past week. Clutch Auto served a second set of interrogatories and a second set of request for production, and Navistar objected to every single discovery request and produced exactly zero documents. (Exhs. H and I.) Navistar misrepresents its discovery compliance to this Court. In any event, written discovery is outside of the present motion.

Ninth, Navistar argues in the alternative that an adverse inference be given. (Doc. 115 at p. 14.) However, Navistar still has not met the legal requirements for giving an adverse inference. Further, Navistar's claim for relief with respect to an adverse inference is so broad and non-specific that it is meaningless. Navistar wants an adverse inference that spoliated ESI would have

- 9 -
2398907\6\24100\54057

does not even have that position. (Exh. A at 183:10-16; Exh. A at 347:10-13.) Accordingly, Navistar's argument that Clutch Auto was willfully blind was simply false.

Sixth, Navistar also argues that the format of Clutch Auto's ESI production was wrong. (Doc. 115 at p. 6.) But the parties expressly agreed acceptable formats for production included searchable PDF, (doc. 27 at p.4, ¶ 3), which was the format Clutch Auto used to produce its records. That format is so ubiquitous that even the federal court system uses searchable PDF for its docket filings. There was nothing wrong with PDF format.

Seventh, Navistar claims that hard copies were manipulated. (Doc. 115 at p. 9.) But the hard copy documents which Clutch Auto had clipped together and produced were Clutch Auto's response to various requests for production. Navistar is mixing apples and oranges by inserting any issues it has with Clutch Auto's document production into its motion concerning purported ESI failures warranting dismissal of an entire case.

Eighth, Navistar claims that it has met every discovery deadline and timely served discovery responses, while Clutch Auto has not. (Doc. 115 at p. 10.) To the contrary, Navistar has not answered discovery as recently as this past week. Clutch Auto served a second set of interrogatories and a second set of request for production, and Navistar objected to every single discovery request and produced exactly zero documents. (Exhs. H and I.) Navistar misrepresents its discovery compliance to this Court. In any event, written discovery is outside of the present motion.

Ninth, Navistar argues in the alternative that an adverse inference be given. (Doc. 115 at p. 14.) However, Navistar still has not met the legal requirements for giving an adverse inference. Further, Navistar's claim for relief with respect to an adverse inference is so broad and non-specific that it is meaningless. Navistar wants an adverse inference that spoliated ESI would have

been adverse to Clutch Auto, but Navistar has not identified what exactly the spoliated ESI was. Navistar cannot imagine emails existed and were not produced, and then tell the jury unknown emails on unspecified topics would have been adverse to Clutch Auto. If that were the case, any party could say emails may have existed, and the jury should take an adverse inference from these unknown emails, and no one would know what the adverse inference is even supposed to be.

Finally, the unpublished case Navistar attached at Exhibit A is a good foil to this case. In Navistar's case, *Krumwiede v. Brighton Assocs., L.L.C.*, 2006 WL 1308629 (N.D. Ill. May 8, 2006)[4], the dispute arose out of an employee taking confidential corporate data stored on a laptop. *Id.* at *1. When the party was ordered to return the laptop, he intentionally deleted the data and went to great lengths to ensure the data could not be recovered. *Id.* at *4-7. On a motion for sanctions, the court properly found the party had acted willfully, *id.* at *9, and that a default judgment was the appropriate remedy since the data was intentionally deleted. *Id.* at *10-11.

*Krumwiede* is in stark contrast to the present situation. Here, Clutch Auto never intentionally destroyed anything. Clutch Auto continued following its standard business practice of preserving everything in paper form. Clutch Auto produced all of the documents in its possession that Navistar requested. Clutch Auto made good faith efforts to comply with the ESI production. Indeed, Navistar's only complaint regarding the actual ESI production is that the files were produced in searchable PDF format. This case is completely opposite of *Krumwiede*, and where *Krumwiede* warranted sanctions, this case warrants none.

Navistar ruined Clutch Auto's business, devastated Clutch Auto's operations, and forced Clutch Auto to close its foundry. (Exh. A at 70:9-14; Exh. A at 116:17-18; Exh. A at 201:21-22.)

---

[4] A copy of this opinion is attached to Navistar's memorandum at Exhibit A, doc. 115-1.

Navistar's current motion is an attempt to escape a determination on the merits. For the above reasons, this Court should deny Navistar's motion.

                                        Respectfully submitted,

                                        Clutch Auto Limited

                                        By:    s/ Sanjay Shivpuri
                                                  One of its attorneys

Sanjay Shivpuri
David J. Tecson
Adam Beattie
Chuhak & Tecson, P.C.
30 South Wacker Drive, Suite 2600
Chicago, Illinois 60606
(312) 444-9300
sshivpuri@chuhak.com
dtecson@chuhak.com
abeattie@chuhak.com